# CV 16 4733

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Douglas Panattieri and Krystina Panattieri; individually and Ex Rel a certain dog named "Caesar" on their own behalf and on behalf of all other persons and Ex Rel all other dogs similarly situated, | CLASS ACTION |
| Plaintiffs, | JURY DEMAND |
| v. | **MATSUMOTO, J.** |
| The City of New York, The New York City Department of Health & Mental Hygiene, Dr. Mary Travis Bassett, Commissioner of the Department, in her official capacity, Norma S. Torres, Director of Veterinary Public Health Services of the Department, in her official capacity, The New York City Animal Care and Control, Inc., and Risa Weinstock, Executive Director of the NYC AC&C, in her official capacity, | **TISCIONE, M.J.** |
| Defendants | August 24, 2016 |

## CLASS ACTION COMPLAINT

2016 AUG 24 PM 2:44 FILED CLERK

1

Beginning in October 1939, the government of Germany ordered the execution of over 70,000 physically & mentally disabled people by declaring them:

## "Not Worthy of Life"

We know where that led...

On December 6, 2013, a Senior Assistant Corporation Counsel, as the attorney for New York City and the NYC Department of Health, declared in open Court[1] that the DOH's decision to kill a dog was:

## "a minor ministerial act"

and thus not subject to the right to be free of unreasonable searches and seizures and due process protections guaranteed by the New York State & Federal Constitutions.

Apparently the lesson was lost on New York City.

---

[1] Robin Mittasch, as Trustee of "The Companion Animal Trust for the Benefit of Jake" and Ex Rel a certain dog named "Jake" v. The City of New York, The New York City Department of Health & Mental Hygiene and New York City Animal Care and Control, Inc.,.Index No. 101514-20013

2

COME NOW, Plaintiffs, Douglas Panattieri and Krystina Panattieri; individually and Ex Rel a certain dog named "Caesar" on their own behalf and on behalf of all other persons and Ex Rel all other dogs similarly situated; in the above-titled action and file their Class Action Complaint against Defendants The City of New York (NYC), The New York City Department of Health & Mental Hygiene (DOH), New York City Animal Care and Control, Inc. (AC&C), Dr. Mary Travis Bassett, Commissioner of DOH, in her official capacity, Norma S. Torres, Director of Veterinary Public Health Services of DOH, in her official capacity, and Risa Weinstock, Executive Director of AC&C, in her official capacity.

It has been said that:

> "individual freedom finds tangible expression in property rights."[2]

The Defendants, working in concert, have disregarded this venerable principle by seizing, keeping, and often destroying the private property of others (in this case, dogs) without providing the constitutionally required minimum protections of:

> "a sufficient supply of good and wholesome air, food, shelter and water"[3]

and

> "necessary sustenance, food or drink"[4]

(which has been defined by the Courts to include:

> "veterinary care and adequate shelter to maintain health and comfort."[5]

This they cannot do.

---

[2] *United States v. James Daniel Good Real Property, 510 U.S. 43, 61 (1993).*

[3] NYS Agriculture and Markets Law §356

[4] NYS Agriculture and Markets Law §353

[5] People v. Mahoney, 9 Misc.3d 101804 N.Y.S.2d 535 (2005) citing People v. O'Rourke, 83 Misc.2d 175, 178, 369 N.Y.S.2d 335 [Crim. Ct., N.Y. County 1975], "the failure to supply necessary medical attention to a limping animal was held to fall within the parameters of the statute. We likewise find that the jury charge defining sustenance to include veterinary care and adequate shelter to maintain the dog's health and comfort properly conveyed the appropriate law."

## I. INTRODUCTION

1. This is a class action, arising under 42 U.S.C. § 1983, seeking declaratory and injunctive relief related to the conditions of impoundment of Plaintiffs' dogs, in violation of Plaintiffs' rights to be free of unreasonable seizures and to due process under the Fourth Amendment of the US Constitution[6].

2. The named Plaintiffs' dog and the dogs of each of the members of the putative plaintiff class were seized and impounded, without any process, by the Defendant NYC Department of Health at the facilities of the Defendant NYC Animal Care & Control and subjected to conditions inconsistent with the minimum standards required by NYS law and constituting a criminal act against Plaintiffs' property.

3. The named Plaintiff class representatives are also members of a sub-class of the Plaintiff Class whose dogs are alleged by the defendants to be dangerous and who timely refused to agree to allow defendants to summarily execute their dog, or will in the future refuse to agree to allow defendants to summarily execute their dog, and whose dogs are (or will be) impounded and held by the AC&C pursuant to the direction of the DOH pending resolution of the administrative/legal process.[7]

4. The AC&C, by the terms of its agreement with the DOH is required to accept all

---

[6] The Court should note that the instant action does not seek redress against the defendants for violating the rights of the putative class members for violating NYS Agriculture and Markets Law §356 or §353, but rather assert that the failure to comply with the minimum standards set forth in those sections during the impound of plaintiffs' dogs (below which constitutes criminal negligence and abuse) is a meaningful interference with an individual's possessory interests in that property, and a violation of the plaintiffs' rights under the 4th Amendment (U.S. v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)

[7] Though for the purposes of this action plaintiffs are not directly challenging the legality of the seizure and impoundment of the dogs by the defendants, but rather the conditions such dogs are kept in during such impoundment, the Court should note that a proceeding is pending pursuant to Article 78 of the CPLR between the putative class representatives and the defendants herein regarding the plaintiffs' claim that the seizure pursuant to NYC Health Code §161.07 is subject to preemption by the Agriculture & Markets Law (AGM) §123 (as read in conjunction with AGM §107.5.) Panattieri v. NYC Index No. 101220-2016

dogs seized, surrendered or otherwise coming into its possession regardless of condition or medical affliction. The vast majority of these dogs either are strays or have been abandoned or surrendered by their owners and the AC&C takes them in and cares, feeds and shelters them as a parens patriae.

5. The ACC&C does not maintain isolation facilities permitting it to segregate sick and diseased dogs from healthy dogs. Thus, due to overcrowding and the lack of proper intake diagnostic protocols and isolation facilities or procedures, sick dogs are housed in cages adjacent to and in close proximity to healthy dogs.

6. As a result of the foregoing, and due to the lack of isolation facilities and protocols, the coughing of these sick and diseased dogs emit airborne pathogens into the atmosphere within the shelter, cross infecting the majority of the dogs incarcerated at AC&C and causing various respiratory infections commonly referred to as "kennel cough".

7. The overwhelming majority[8] of dogs held by the AC&C, as a result of breathing the disease laden air, develop kennel cough and, without any individual testing or diagnoses, are treated pro forma with doxycycline. Those that respond to treatment recover, those that don't either develop pneumonia and die or, through a "minor ministerial act" are selected to be executed by AC&C the next day.

8. In addition to these dogs, AC&C houses and will house dogs, impounded by the DOH for rabies holds, dog bite incidents and other reasons, that do have owners. It

---

[8] *See* Office of the Manhattan Borough President Scott M. Stringer Nadler, <u>Led Astray: Reforming New York City's Animal Care and Control</u> 11 (2013), New York City Comptroller Scott M. Stringer (April 19, 2015) ("When animals from AC&C arrive at our facility we see a nearly 100 percent outbreak rate of infection, typically upper respiratory inflections, including influenza. These conditions can become very serious, to the point of being life threatening, but are entirely preventable."),

5

is the owners of these dogs that form the putative class herein[9].

9. NYS Agriculture & Markets Law §356 requires that:

   "A person who, having impounded or confined any animal, refuses or neglects to supply to such animal during its confinement a sufficient supply of good and wholesome air, food, shelter and water, is guilty of a misdemeanor, punishable by imprisonment for not more than one year, or by a fine of not more than one thousand dollars, or by both."

10. In each instance, the dogs of the owners constituting the putative class have been taken from their owners, without process and impounded and confined by the Defendant AC&C pursuant to the direction of the DOH, and held in the same shelter and cages as the other dogs hereinbefore referred to. The owners are at risk of having their dogs infected and killed due to the lack of "a sufficient supply of good and wholesome air" which NYS Agriculture & Markets Law §356 requires.

11. During the pendency of the impound, the dogs are held at the AC&C shelters while their owners are deprived access to, possession of and the use and companionship of their dogs, as well as denied the ability to monitor and ascertain whether their dogs are receiving necessary care and exercise while not being exposed to disease. During this time, the dogs are held in solitary confinement in a small cage virtually twenty-four (24) hours a day, seven (7) days a week without adequate exercise, human interaction or human contact. They are allowed to debilitate throughout their months of impoundment.

## II. JURISDICTION AND VENUE

12. This action arises under the Fourth Amendment to the United States Constitution

---

[9] While the illegal and criminal conditions affect all approximately 30,000 animals passing through Defendant AC&C's shelters annually, and all are subject to the debilitating effects of defendants' abuse and neglect, Plaintiffs do not believe they can establish Article III standing for the dogs without known owners who are not held pursuant to DOH holds, and therefore they are not included in the putative class.

6

and the Civil Rights Act of 1871, 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiffs by the Constitution of the United States.

13. The Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 and 1343(a)(3), as this is a civil action arising under the Constitution of the United States.

14. This Court has jurisdiction over Plaintiffs' claims for declaratory relief by virtue of 28 U.S.C. §§ 2201 and 2202.

15. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant 28 U.S.C. § 1367.

16. Venue is conferred by 28 U.S.C. § 1391(b), as Defendants are located in New York City, and the events giving rise to this action occurred in the Eastern District of New York.

### III.   JURY DEMAND

17. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand trial by jury in this action.

### IV.   PARTIES

#### *Plaintiffs*

18. DOUGLAS PANATTIERI and KRYSTINA PANATTIERI are residents of the County of Richmond, City and State of New York. They are the owners of a dog named Caesar, who was seized and has been held by the NYC Animal Care & Control under impound by the NYC Department of Health since May 17, 2016.

19. The named Plaintiffs' dog and the dogs of each of the members of the putative

plaintiff class were seized and impounded, without any process[10], by the Defendant NYC Department of Health at the facilities of the Defendant NYC Animal Care & Control and subjected to conditions inconsistent with the minimum standards required by NYS law, and thus constitute a criminal act against Plaintiffs' property.

20. The named Plaintiff class representatives are also members of a sub-class of the Plaintiff Class who timely refused to agree to the execution of their dog, or will in the future refuse to agree to the execution order issued by the DOH, and whose dogs are (or will be) impounded and held by the AC&C pursuant to the direction of the DOH pending resolution of an administrative/legal process.

### *Defendants*

21. The CITY OF NEW YORK, is a legal entity for purposes of 42 U.S.C. § 1983. The City is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain departments, which act as their agent and for which it is ultimately responsible. The City is responsible for the hiring, control and supervision of all of its departments, including but not limited to the Department of Health and Mental Hygiene. The City assumes the risks incidental to the maintenance of its departments, and the employment of employees of its departments, as said risks attach to the public consumers of the services

---

[10] For the purposes of this action plaintiffs are not directly challenging the sufficiency of the process afforded or the legality of the seizure and impoundment of the dogs by the defendants, but rather the conditions such dogs are kept in during such impoundment, the Court should note that in 2002, the Court of Appeals for the Second Circuit, per now-Justice Sotomayor, explicitly ruled that to comport with the constraints of the Due Process Clause of the 14th Amendment, a municipality which seizes and seeks to retain possession of an accused's property must provide the owner of such property with a prompt "retention hearing" at which the owner may challenge the validity of both the initial seizure of the property and the continued retention thereof. Krimstock v. Kelly. 306 F.3d 40 (2nd Cir. 2002) Plaintiffs' assert the lack of such a hearing makes retention of the dogs by defendants violative of the 14th Amendment.

provided by the departments of the City.

22. The NYC DEPARTMENT OF HEALTH AND MENTAL HYGIENE, is a legal entity for purposes of 42 U.S.C. § 1983. Upon information and belief, the defendant DOHMH is a Department and subdivision of the defendant City of New York. It is authorized and empowered to enforce the health laws of the State of New York and City of New York, and acts as their agent therefore in the area of animal law enforcement.

23. Upon information and belief, at all times described herein the defendant, DR. MARY TRAVIS BASSETT (hereinafter "Bassett") was, and remains, an employee, agent and representative of the City of New York, in her capacity as the Commissioner of the NYC Department of Health and Mental Hygiene, its chief policy maker, and is sued herein solely in her official capacity.

24. Upon information and belief, at all times described herein the defendant, NORMA S. TORRES (hereinafter "Torres") was, and remains, an employee, agent and representative of the City of New York, in her capacity as the Director of Veterinary Public Health Services of the NYC Department of Health and Mental Hygiene, and is sued herein solely in her official capacity.

25. NEW YORK CITY ANIMAL CARE & CONTROL, INC. (hereinafter "AC&C") is a legal entity for purposes of 42 U.S.C. § 1983. Defendant AC&C is a domestic non-profit corporation organized and operating under New York State law with a principal place of business situated at 11 Park Place, Suite 805, New York, New York.

26. Upon information and belief, at all times described herein the defendant, RISA WEINSTOCK (hereinafter "Weinstock") was, and remains, an employee, agent and representative of the AC&C, in her capacity as the Executive Director of the AC&C,

9

its chief policy maker, and is sued herein solely in her official capacity.

## V.  CLASS ALLEGATIONS

*The Plaintiff Class*

27. The named Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), on their behalf and on behalf of all other persons similarly situated ("Plaintiff Class"). The named Plaintiffs are representative parties of a class of individuals consisting of all dog owners whose dogs have been, or will in the future be, seized and impounded, without any process, by the Defendant NYC Department of Health at the facilities of the Defendant NYC Animal Care & Control and subjected to conditions inconsistent with the minimum standards required by NYS law, and thus constitute a criminal act against Plaintiffs' property.

28. The named Plaintiffs also bring this action on behalf of a sub-class within the Plaintiff Class consisting of all such members of the Plaintiff Class who timely refused to agree to the execution of their dog, or will in the future refuse to agree to the execution order issued by the DOH, and whose dogs are (or will be) impounded and held by the AC&C pursuant to the direction of the DOH pending resolution of the administrative/legal process.

29. *Numerosity* — Joinder of all members of the Plaintiff Class is impracticable because the class is so numerous. *See* Fed. R. Civ. P. 23(a)(1). The exact size of the Plaintiff Class is currently unknown because the Defendants do not publish statistics of all dogs so seized and impounded. However, the Defendant NYC AC&C takes in approximately 30,000 animals per year which are all maintained at less than the legal minimum standards of care as set forth by the NYS legislature

in AML§ 353, 356. Additionally, as typified by Plaintiffs, rabies hold impounds and dog bite impounds, additional class members continue to presently increase the size of the Plaintiff Class. The Plaintiff Class is therefore sufficiently numerous to make joinder impractical. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members."); *Robidoux v. Celani*, 987 F.2d 931, 935–36 (2d Cir. 1993) (holding that a class of twenty-two (22) members was sufficiently numerous that joinder of all members would be impracticable); *see id.* at 935–36 (citing approvingly *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (holding that a court "may certify a class even if it is composed of as few as 14 members.").

30. Furthermore, the Plaintiff Class is comprised of members spread out across the City of New York. *See Robidoux*, 987 F.2d at 935–36 (finding that joinder of all prospective class members would be impracticable in part because the members were spread out over the State of Vermont).

31. *Commonality* — The case of the named plaintiffs and members of the proposed class raise identical and common questions of law and fact concerning the denial of their rights as a result of the illegal, substandard and criminal conditions their animal properties are kept in after the seizure and retention of their dogs in violation of the Fourth Amendment to the United States Constitution. *See* Fed. R. Civ. P. 23(a)(2).

32. *Typicality* — The unreasonable seizure and due process claims of the named Plaintiffs are typical of those of the class, and it is expected Defendants will raise the same defenses to the claims. *See* Fed. R. Civ. P. 23(a)(3). The named Plaintiffs' claims are typical of the claims of the class because the named Plaintiffs

and all class members were or will be affected by the illegal, substandard and criminal conditions their animal properties are kept in after the seizure and retention of their dogs. The relief sought by the named Plaintiffs is also typical of the class because the injuries suffered, the nature of the violations experienced and the costs and additional consequential losses incurred are similar to those suffered by all members of the class.

33. *Adequacy* — The named Plaintiffs will adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Each named Plaintiff is a member of the class, his or her claims are coextensive with those of the class, and their interests do not conflict. Moreover, the named Plaintiffs and the class are represented pro bono by the General Counsel for The Lexus Project, Inc. ("Class Counsel")—a 501(c)(3) not-for-profit corporation experienced in and specifically chartered for the litigation of the rights of dog owners whose dogs are alleged to be dangerous. Class Counsel intends to prosecute this action vigorously for the benefit of the entire class.

34. *Fed. R. Civ. P. 23(b)(2)* — Plaintiffs are entitled to injunctive and declaratory relief declaring the illegal, substandard and criminal conditions in which their animal properties are kept in after the seizure and retention of their dogs occasioned by the failure of the Defendants to maintain Plaintiffs' animal property in conditions at least compliant with the minimum standards set out by the NYS Legislature and below which the NYS Legislature has determined to constitute criminal neglect, is unconstitutional and constitutes a per se violation of the Plaintiffs' rights to be free of unreasonable seizures under the 4th Amendment to the U.S. Constitution.

35. As all of the foregoing applies to all members of the proposed Class, declaratory and injunctive relief against the Defendants is thus appropriate. *See* Fed. R. Civ. P. 23(b)(2).

36. The 23(b)(2) class "serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment." *Baby Neal v. Casey*, 43 F.3d 48, 58 - 59 (3rd Cir. 1994). Indeed, section (b)(2) was "designed for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Barnes v. The American Tobacco Company*, 161 F.3d 127 (3rd Cir. 1998) citing Conte, 1 Newberg on Class Actions 3d § 4.11. See also, *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)("As the Advisory Committee Notes explain, 23(b)(2) was adopted in order to permit the prosecution of civil rights actions.") Thus, in the context of civil rights litigation seeking declaratory relief for violation of constitutional rights, Rule 23(b)(2) actions have been held to be particularly appropriate. *Johns v DeLeonardis*, 145 F.R.D. 480, 484 (ND Ill 1992

## VI. DECLARATORY JUDGMENT

37. Plaintiffs have an actual and substantial controversy with Defendants, and unless there is a declaration of the rights of Plaintiffs, declaring that Plaintiffs are entitled to a standard of care of their animal property while it is being held by Defendants sufficient to meet, at a minimum, the standards as set forth in NYS Agriculture & Markets Law §356, Defendants must release such animal property, their dog named Caesar, to Plaintiffs so that such care can be provided.

## VII. CLAIMS FOR RELIEF

### COUNT ONE

### *Unreasonable Seizure Claim - Good Wholesome Air*

38. The plaintiff repeats and reiterates the allegations set forth in paragraphs "1" through "37" herein above, with the same force and effect as if fully set forth at length herein.

39. By holding Plaintiffs' animal property and providing less than the legal minimum standard of care owed to Plaintiffs, including the continual failure to provide good wholesome air as required by N.Y. Agric. & Mkts. Law § 356's "wholesome air" provision, defendants have deprived and will continue to deprive Plaintiffs and all members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth Amendment of the United States Constitution.

40. All defendants are aware of the close to 100% rate of infection of respiratory illness in all the animals seized and held by AC&C, due to the lack of wholesome air.[11] Defendants knowingly violate the minimum standards of human dignity.[12] The

---

[11] *See* Office of the Manhattan Borough President Scott M. Stringer Nadler, Led Astray: Reforming New York City's Animal Care and Control 11 (2013), New York City Comptroller Scott M. Stringer (April 19, 2015) ("When animals from AC&C arrive at our facility we see a nearly 100 percent outbreak rate of infection, typically upper respiratory inflections, including influenza. These conditions can become very serious, to the point of being life threatening, but are entirely preventable."), http://comptroller.nyc.gov/newsroom/comptroller-stringer-audit-improper-handling-of-drugs-and-poor-shelter-conditions-at-animal-care-control/ ("At the Brooklyn shelter, poor ventilation contributed to a strong gas odor, while a shared climate control system between isolation rooms for sick animals and rooms with healthy animals increased the risk of spreading contagious diseases.")

[12] Brown v. Plata, 563 U.S. 493, 510, 131 S. Ct. 1910, 1928, 179 L. Ed. 2d 969 (2011) ("Prisoners retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment. ' "The basic concept underlying the Eighth Amendment is nothing less than the dignity of man." ' *Atkins v. Virginia,* 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (quoting *Trop v. Dulles,* 356 U.S. 86, 100, 78 S.Ct. 590, 2 L.Ed.2d 630

minimum of such standards have been specifically established by the New York legislature in AML § 356.

41. The failure to comply with the minimum standards set forth in AML § 356 during the impound of plaintiffs' dogs (below which constitutes criminal negligence and abuse) is a meaningful interference with an individual's possessory interests in that property, and a violation of the plaintiffs' rights under the 4th Amendment (U.S. v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) and thus a per se violation of the Plaintiffs' Fourth Amendment rights to be free of *unreasonable* seizures of their property. (Emphasis added.)

42. All defendants have acted under pretense and color of state law and in their official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

---

(1958) (plurality opinion))."), <u>Comptroller Stringer Audit: Improper Handling of Drugs and Poor Shelter Conditions at Animal Care & Control</u>, New York City Comptroller Scott M. Stringer (April 19, 2015), http://comptroller.nyc.gov/newsroom/comptroller-stringer-audit-improper-handling-of-drugs-and-poor-shelter-conditions-at-animal-care-control/ ("How we treat our most vulnerable creatures is a reflection of our decency as a society, and AC&C is failing in that important responsibility.").

## COUNT TWO

### *Unreasonable Seizure Claim -Food, Shelter and Sustenance*

43. The plaintiff repeats and reiterates the allegations set forth in paragraphs "1" through "42" herein above, with the same force and effect as if fully set forth at length herein.

44. By holding Plaintiffs' animal property and providing less than the legal minimum standard of care owed to Plaintiffs, including the continual failure to provide good and wholesome food, sufficient shelter and Sustenance as required by N.Y. Agric. & Mkts. Law § 356, defendants have deprived and will continue to deprive Plaintiffs and all members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth Amendment of the United States Constitution.[13]

45. All defendants have acted under pretense and color of state law and in their official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance

---

[13] *See* ACC Board Meeting, June 24, 2015, beginning at 45:54, ACC Board Meeting, June 24, 2015, beginning at 53:20, ACC Board Meeting, June 9, 2016, beginning at 18:46 (admitting that they are once again without a medical director. They previously had no medical director for three years until hiring one in 2014), <u>Comptroller Stringer Audit: Improper Handling of Drugs and Poor Shelter Conditions at Animal Care & Control</u>, New York City Comptroller Scott M. Stringer (April 19, 2015), http://comptroller.nyc.gov/newsroom/comptroller-stringer-audit-improper-handling-of-drugs-and-poor-shelter-conditions-at-animal-care-control/ ("Animal Care & Control is running an operation that could make your stomach turn," Comptroller Stringer said. "We found expired drugs, harmful conditions, and vaccines stored next to frozen remains.").

thereof), and failed to prevent one another from doing so. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

## COUNT THREE

### *Violation of Fourth Amendment When Owners' Property Not Yet Been Adjudged Dangerous or Vicious and Held Only for Safekeeping*

46. The plaintiff repeats and reiterates the allegations set forth in paragraphs "1" through "45" herein above, with the same force and effect as if fully set forth at length herein.

47. Plaintiffs also contend that by seizing Plaintiffs' dogs and retaining possession of such dogs after the expiration of the "10 day Rabies Quarantine" period, under conditions when the dog has not been adjudged dangerous or vicious and is being held merely for safekeeping until a determination of same can be made, and which conditions of being held did not meet the minimum standards of care when Plaintiffs' animal property was in the possession and control of Defendants as set forth in AML §356, Defendants violated Plaintiffs' rights pursuant to the Fourth Amendment of the US Constitution.

48. Under the Fourth Amendment, Plaintiffs have a right to have their property treated in a way such that said property does not debilitate during the time of it being held.

49. The aforesaid defendants' violation of plaintiffs' due process rights were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

50. Having deliberately violated the plaintiffs' Constitutionally protected rights, and concomitantly having caused the plaintiff to sustain damages as a result thereof, defendants are liable to the Plaintiffs, and the Plaintiffs are entitled to secure declaratory and injunctive relief against the defendants, pursuant to 42 U.S.C. §1983.

51. The actions of the defendants were knowingly performed with actual spite, malice, and an affirmative intent to injure the plaintiff and a reckless disregard and

indifference for Plaintiffs' constitutional rights, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiffs' United States Constitutional rights.

## COUNT FOUR

### *Claim of Breach of Duty As To Defendant NYC AC&C*

52. The plaintiff repeats and reiterates the allegations set forth in paragraphs "1" through "51" herein above, with the same force and effect as if fully set forth at length herein.

53. Plaintiff contends that NYACC is a bailee for hire and is therefore held to a higher standard to provide adequate care. Defendant NYACC receives in excess of $13 million dollars a year from New York City[14] yet knowingly place animals entrusted to its care in a situation of substandard care, breaching its duty and violating Plaintiffs' Fourth Amendment Rights.

54. Plaintiffs have suffered, and/or are currently suffering, immediate and irreparable harm to their property due to the actions of Defendants, and will continue to suffer such harm.

## COUNT FIVE

### *Non-Delegable Duty Claim Under New York Agriculture and Markets Law §353, and §356 as to Defendants NYC and NYC-DOH*

55. The plaintiff repeats and reiterates the allegations set forth in paragraphs "1" through "54" herein above, with the same force and effect as if fully set forth at length herein.

56. Plaintiff contends that NYC-DOH has an obligation and non-delegable duty to supervise and maintain care for all seized and held animals with a level of care at least to the standard required by state law, through AML § 353 and § 356. Failure to provide minimum levels of

---

[14] Melanie Grayce West, Animal Groups Are Cutting Ties With New York City Shelter Operator, Wall Street Journal (June 24, 2015, 8:39 PM), http://www.wsj.com/articles/animal-groups-are-cutting-ties-with-new-york-city-shelter-operator-1435192568.

care required by state law violates Plaintiffs' Fourth Amendment rights as to their property.

57. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights. Plaintiff has suffered, and/or are currently suffering, immediate and irreparable harm due to the actions of Defendants, and will continue to suffer such harm.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff requests that the Court render judgment declaring the minimum standards of care Plaintiffs are entitled to from defendants regarding their animal property that was seized and impounded by defendants and the issuance of a Permeant Injunction barring defendants from holding dogs in diseased and unsafe conditions that fail to meet such minimum standards, together with such other, further and different relief as may seem to the Court just and proper.

Richard Bruce Rosenthal
Federal Bar No. rb1834

Richard Bruce Rosenthal, Esq.
120-82 Queens Boulevard
Kew Gardens, NY 11415-1204
Tel:    (718) 261-0200
Cell:   (516) 319-0816
Fax:    (718) 793-2791
richard@thedoglawyer.com

**Thompson Gould Page**
pro hac vice application to be submitted

Thompson Gould Page, LLC
1 Linden Place, Suite 108
Hartford, CT 06106–1748
Tel:    (860) 895-6644
Cell:   (860) 983-7655
Fax:    (860) 896-6672
thom@tpagelaw.com

Attorneys for Plaintiffs